UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WILDEARTH GUARDIANS, PROJECT COYOTE, WESTERN WATERSHEDS PROJECT, BOULDER-WHITE CLOUDS COUNCIL, ANIMAL WELFARE INSTITUTE,<br><br>Plaintiffs,<br><br>v.<br><br>CHARLES A. MARK, in official capacity as Forest Supervisor of the Salmon-Challis National Forest, NORA RASURE, in official capacity as Regional Forester for Region Four, THOMAS TIDWELL, in official capacity as Chief of the U.S. Forest Service, and U.S. FOREST SERVICE, a federal agency,<br><br>Defendants. | Case No. 4:13-cv-00533-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Plaintiffs, who comprise several local and national environmental groups, filed a complaint and motion for temporary restraining order on December 23, 2013, against the United States Forest Service ("USFS") seeking an injunction to prevent a wolf and

**MEMORANDUM DECISION AND ORDER - 1**

coyote derby advertised for Saturday, December 28-29, 2013, in Salmon, Idaho. The USFS filed a combined response and motion to dismiss the complaint. The Court conducted a hearing on an expedited basis[1] regarding the motion for temporary restraining order on Friday, December 27, 2013, at 9:30 a.m. After carefully considering the parties' briefs, arguments, and the relevant authorities, the Court will deny Plaintiffs' motion for temporary restraining order.[2]

## BACKGROUND

On December 11, 2013, Plaintiffs learned of the December 28-29, 2013, "First Annual Coyote and Wolf Derby," with rules to be picked up and prizes awarded in Salmon, Idaho, at two local sportsmen's stores. The event is sponsored by the Salmon Chapter for Idaho for Wildlife, a local sportsmen's group, and is a contest hunt specifically targeting wolves and coyotes. The advertisement explains that contestants may enter the event for a $20 entry fee and that "all Idaho fish and game rules apply. Public and private land hunting with permission. Hunting in Idaho only." Ex. 1 (Dkt. 4-2.)[3] Registration for the contest is scheduled for December 27, 2013, between 4-8 p.m., in Salmon, Idaho.

Coyotes can be hunted at any time in Idaho with a hunting license, and there is no limit to the amount of animals that may be harvested. Wolves in Idaho have been removed from protection under the Endangered Species Act since May 5, 2011, and can

---

[1] All parties consented to the jurisdiction of a United States Magistrate Judge entering a final order in this matter. (Dkt. 9, 15, 17.)
[2] The Court need not address the standing issue raised in Defendants' motion to dismiss, but will take the issue up once the motion to dismiss is fully briefed.
[3] Although the flyer advertised an entry fee, Idaho for Wildlife decided to drop the entry fee requirement as of December 23, 2013, the day this lawsuit was filed. Decl. of Adler ¶ 5 (Dkt. 20-3.)

**MEMORANDUM DECISION AND ORDER - 2**

be hunted from August 31 to March 31 each year, or until harvest limits are reached. *See* Decl. of Keegan (Dkt. 20-1.)[4] Hunters are required by Idaho Department of Fish and Game regulations to report a wolf kill within 72 hours, and have it verified by state authorities within 10 days. *Id.* ¶ 12.

USFS regulations require a special use permit for certain activities that occur on USFS public lands. However, a special use authorization is not required for "noncommercial recreational activities, such as camping, picnicking, hiking, fishing, boating, hunting, and horseback riding...." 36 C.F.R. § 251.50(c). In contrast, a commercial use or activity is "any use or activity on National Forest System lands (a) where an entry or participation fee is charged, or (b) where the primary purpose is the sale of a good or service, and in either case, regardless of whether the use or activity is intended to produce a profit." 36 C.F.R. § 251.51.

Plaintiffs alerted the USFS to the Salmon wolf and coyote derby, and inquired whether the USFS would require or had already issued a permit. The USFS determined that the contest, which takes place on private property in Salmon, Idaho, is not a "commercial event occurring on NFS land." Rather, hunters will follow all laws and regulations promulgated by Idaho Fish and Game, and will take their kills to Salmon to obtain the prizes advertised. In other words, the USFS's position is that the participants are not paying to enter a contest that actually takes place on or in the National Forest. Hunting will take place in the forest, which is lawful, and the contest occurs in Salmon,

---

[4] For the 2013/14 season, the harvest limit for grey wolves in the Salmon zone is 45, and by December 24, 2013, only 6 had been harvested in the area. Decl. of Keegan ¶ 17 (Dkt. 20-1.)

**MEMORANDUM DECISION AND ORDER - 3**

Idaho, on private property. The USFS position is that the hunters will be dispersed, hunting on public, private, or federal lands, such that there is no concentrated "gathering" or "group" on USFS land, and no permit required.

Plaintiffs generally aver that their members use and visit the Salmon-Challis National Forest, and will be injured because their use and enjoyment of the forest will be diminished during the two days of the derby hunt. Specifically, the individuals aver that they will be adversely affected because they will be unable to hike and enjoy the forest over the weekend due to the concentration of hunters, and may be subjected to the possibility of viewing coyotes and wolves being shot by derby participants, or seeing dead or wounded animals. Decl. of Wagenknecht ¶ 10 (Dkt. 4-6.) Plaintiffs allege also that they will be harmed because "many" animals will be killed thereby "permanently harming" their enjoyment of the forest lands, and their ability to observe the predators in the wild. *Id*. ¶11 (Dkt. 4-6.) *See also* Decl. of Stone ¶12 (Dkt. 4-7); Decl. of Fox ¶¶ 11, 12 (Dkt. 4-8); Decl. of Miller ¶¶ 5-6 (Dkt. 4-9).

Plaintiffs challenge the decision of the USFS determining that no special use authorization is required, and request that this Court grant the following relief:

A. An order temporarily restraining USFS from allowing the Contest to occur on the Salmon-Challis National Forest without a special use authorization and without complying with NEPA, pending expedited resolution of this matter by the Court, or pending resolution of preliminary injunction motion if such motion is necessary;

B. An order waiving the bond requirement of Federal Rule of Civil Procedure 65(c);

**MEMORANDUM DECISION AND ORDER - 4**

C. An order that USFS affirmatively inform the Killing Contest sponsors that hunting on the Salmon-Challis National Forest for purposes of competing in the Killing Contest is prohibited without a special use permit; and

D. An order that USFS law enforcement officers enforce the prohibition of Killing Contest related hunting on the Salmon-Challis Forest on December 28 and 29, 2013.

## ANALYSIS

**1.     Applicable Law**

Plaintiffs bring their challenge under the Administrative Procedure Act, which allows judicial review by individuals aggrieved or adversely affected by agency action. 5 U.S.C. § 702. The law provides that when "agency action, findings, or conclusions" are found to be "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" or "(D) without observance of procedure required by law" the reviewing court shall hold unlawful and set aside those actions, findings, and conclusions. 5 U.S.C. § 706(2). Plaintiffs challenge the USFS's decision not to require a special use permit. A court may set aside an agency action only if the court determines that the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "[T]he [Forest] Service is entitled to substantial deference to its interpretation of its own regulations." *Forest Guardians v. US. Forest Serv.,* 329 F.3d 1089, 1097 (9th Cir. 2003) (citing *Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 512 (1994)).

**MEMORANDUM DECISION AND ORDER - 5**

## 2. Standards for Issuance of Temporary Restraining Order

To obtain a temporary restraining order, Plaintiffs must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to them in the absence of preliminary relief; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def Council*, 555 U.S. 7, 20-23 (2008). The Ninth Circuit has held that "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Under this approach, "serious questions going to the merits" requires more than showing that "success is more likely than not;" it requires a plaintiff to demonstrate a "substantial case for relief on the merits." *Leiva-Perez v. Holder*, 640 F.3d 962, 967-68 (9th Cir. 2011).

Further, "under *Winter*, plaintiffs must establish that irreparable harm is *likely*, not just possible, in order to obtain a preliminary injunction." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (emphasis in original). Irreparable harm has been described as "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction." 11A Wright & Miller, FED. PRAC. & PROC. § 2948. Where a plaintiff fails to demonstrate a likelihood of irreparable harm in the absence of preliminary relief, the court need not address the remaining elements of the preliminary injunction standard. *See Center for Food Safety v. Vilsack*, 636 F.3d 1166, 1174 (9th Cir. 2011).

**MEMORANDUM DECISION AND ORDER - 6**

Plaintiffs have not clearly established a likelihood of success on the merits. There are two aspects of the USFS regulations at issue. First, USFS regulations do not require a special use authorization for noncommercial recreational activities such as hunting. 36 C.F.R. 251.50(c). Commercial use or activity is defined by any use or activity on national forest land where an entry or participation fee is charged. 36 F.F.R. § 251.52. Even assuming the Salmon Chapter for Idaho for Wildlife was still charging an entry fee, the private encouragement of hunting, a permissible activity on USFS managed lands, does not appear to be encompassed within the regulations. Hunting, regardless of participation in the derby, may still occur in the forest.[5]

Plaintiffs cite *U.S. v. Brown*, 200 F.3d 710 (10th Cir. 1999), for the proposition that the USFS's interpretation of its regulations defeats the purpose of the permitting requirements for commercial activity. In *Brown,* the United States Court of Appeals for the Tenth Circuit rejected the argument that an individual who conducted his snowmobile rental operations outside of Forest Service lands did not need a special use authorization. There, however, the snowmobile operator was renting snowmobiles and offering merchandise for sale for use in the forest---he was delivering the snowmobiles to users in the forest, knew that his services were being used exclusively in the forest, and was engaged in a profit making venture. Under those circumstances, the Tenth Circuit held that Brown violated USFS's regulation requiring a permit for commercial activities. 200 F.3d at 715.

---

[5] The Court is cognizant of Plaintiffs' argument that the plain language of the USFS's regulation suggests an entry fee converts the noncommercial use to commercial use. But the Court is not deciding that issue at this time.

**MEMORANDUM DECISION AND ORDER - 7**

In this case, the private promoters of the derby are not offering merchandise for sale. Rather, they are encouraging the use of the forest for a lawful activity---hunting---and, to compete for prizes, the derby participants must return to Salmon to claim them. None of the judging, awarding of prizes, or viewing of the animals will be on USFS lands. Only hunting will occur there. The entry fee, if charged, is not being charged to gain hunting privileges, and the derby is not a profit making venture capitalizing on the use of the forest as was the snowmobile rental and delivery operation in *Brown*.

The second aspect of USFS regulations at issue involves "group use." For noncommercial activity conducted on National Forest System lands involving a group of 75 or more people, either as participants or spectators, a special use authorization is required. 36 C.F.R. § 251.50(e); §251.51. Plaintiffs contest the post-hoc rationale provided by the USFS for not following this regulation. Nonetheless, the derby hunt is not like a foot race or ski race, where organizers would require the use of a loop or track for all participants to race upon. Rather, hunters will be dispersed throughout the forest, hunting at their own pace and in their own preferred territory, and not in a prescribed location within a designated perimeter. The hunters may hunt anywhere they wish---whether on public (Idaho state managed) lands, private lands, or USFS managed lands, as long as they follow Idaho state hunting regulations.[6] There is no evidence that there will

---

[6] The Bureau of Land Management regulations, which are more specific, would have required a special use permit. *See* Decl. of Cotton ¶ 11 (Dkt. 4-10.) The BLM, which manages lands near Salmon, declined to allow hunters participating in the derby to hunt on BLM managed lands, because the BLM was unable to issue the required permit for them to do so. Decl. of Alder ¶6, 8 (Dkt. 20-3.) Idaho for Wildlife, the derby sponsor, is informing participants that they may not hunt on BLM lands near Salmon. Decl. of Alder ¶ 6—9 (Dkt. 20-3.)

**MEMORANDUM DECISION AND ORDER - 8**

be a concentration of hunters any greater over this two-day period than experienced at other peak time periods during the hunting season.

Plaintiffs fear the behavior of the hunters may be different because the derby is encouraging a large group of hunters to invade the forest over a condensed time period, as well as encouraging competitive hunting. Although this precise issue is not addressed by the declarations submitted by the USFS, Plaintiffs have not presented specific evidence to support their fear. Rather, Plaintiffs' declarations provide only generalized fears regarding their safety, the safety of others, and the safety of the environment that is no different than what may occur during any use of the forest. There is insufficient evidence that the competitive nature of the derby will alter or interfere with the ability of law enforcement (both state and federal) to enforce the hunting laws, and the regulations regarding use of the forest.

Second, Plaintiffs have not shown a likelihood of irreparable harm in the absence of preliminary relief. Even if the Court were to conclude Plaintiffs raise serious questions going to the merits, the Court finds Plaintiffs have not demonstrated that the balance of hardships tips sharply in their favor. Plaintiffs' general description of their collective fear for their safety and that of their families and pets because of the two-day event does not describe a fear different than what would otherwise occur during hunting season in general. Hunting is legal, authorized, and encouraged during this same time period regardless of derby participation. Wolf hunting season will continue after the derby until March of 2014, unless harvest limits are reached earlier. Coyotes have no hunting season, and may be killed in concentrated amounts at any time.

**MEMORANDUM DECISION AND ORDER - 9**

Plaintiffs claim they will witness animals being killed or see dead animal carcasses, and will be frightened by shooters and gunshots in a concentrated time and place. However, Plaintiffs may see dead animal carcasses regardless of the derby, because it is hunting season. Further, the forest comprises hundreds of acres, and Plaintiffs have not identified how an increase in hunting over such a large area will ruin the enjoyment of the forest during a two-day period, when people may hunt on public, private, or USFS managed lands. None of the declarants indicated they were planning to alter their plans for enjoying the forest this weekend.

Plaintiffs fear also that large numbers of wolves and coyotes will be killed, diminishing the animals' overall numbers and decreasing Plaintiffs ability to observe the animals in the forest. Additionally, Plaintiffs describe a generalized harm to the stability of the animal populations that may occur with a concentrated hunt. However, Idaho Fish and Game regulates the harvesting of wolves. To date, wolf quotas have not been met for the Salmon-Challis National Forest regions.[7] Thus, the likelihood is extremely remote that the number of wolves killed would even come close to reaching or exceeding the harvest limits. And, there is no quota on the number of coyotes that may be hunted.

The two-day derby is the "first annual," and there is no evidence that the event will occur over multiple weekends during hunting season, or will become an annual event. Accordingly, Plaintiffs have not identified they will suffer harm other than what

---

[7] The declaration of Thomas Keegan, (Dkt. 20-1), describes the harvest limits in the various management zones within the forest.

**MEMORANDUM DECISION AND ORDER - 10**

might ordinarily occur during a successful hunting season within lawful limits prescribed by the state of Idaho.

While Plaintiffs and others may find the concept of a derby and prizes being awarded for the killing of animals repugnant, hunting is a lawful activity in Idaho. The derby advertisement states that hunters will be required to comply with Idaho state law. The promoter is providing educational packets and rule sheets, as well as youth mentors available to help train hunters. Decl. of Alder ¶ 6 (Dkt. 20-3.) There is no evidence before the Court that the promoters of the event are encouraging disregard for Idaho state law or, for that matter, forest service regulations regarding use of the forest in general. Plaintiffs have not, therefore, articulated an irreparable harm justifying the Court's award of the extraordinary preliminary relief Plaintiffs seek.

## CONCLUSION

For the reasons set forth above, the Court concludes that Plaintiffs have not met their burden for the issuance of a temporary restraining order.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Plaintiffs' Motion for Temporary Restraining Order (Dkt. 4) is **DENIED**.

Dated: **December 27, 2013**

Honorable Candy W. Dale
United States Magistrate Judge

MEMORANDUM DECISION AND ORDER - 11